IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on )
behalf of all others similarly situated, )
         Plaintiff, )
          )
   vs ) Civil Action No. 2:14-cv-1455
          )
CRACKER BARREL OLD COUNTRY )
STORE, INC., )
         Defendant. )

## MEMORANDUM ORDER

On September 23, 2015, Plaintiff, Sarah Heinzl, filed a motion to compel (ECF No. 76), requesting that Defendant, Cracker Barrel Old Country Store, Inc., be required to produce any and all reports prepared by third parties that assessed Defendant's compliance with the parking accessibility requirements of the Americans With Disabilities Act, 42 U.S.C. § 12101 (ADA), as well as other documents relating to ADA compliance that Defendant's 30(b)(6) corporate designee, Steven Dorsey, referred to during his deposition. On October 7, 2015, Defendant filed a response in opposition to the motion (ECF No. 85) and on October 13, 2015, Plaintiff filed a reply brief (ECF No. 87).

Plaintiff states that, on January 7, 2015, she served her First Set of Requests for Production of Documents on Defendant. (ECF No. 76 Ex. A.) In pertinent part, Plaintiff requested: "All documents of any nature which reflect Defendant's efforts to cause the Defendant's parking lots and/or paths of travel from the parking lots to the Defendant's facilities to comply with the ADA;" and "All documents which reflect Defendant's efforts to ensure the Defendant's facilities comply with the ADA." Defendant served responses to Plaintiff's discovery requests on February 23, 2015.

On March 2, 2015, Plaintiff served Defendant with Plaintiff's Amended Second Set of Requests for Production. In particular, Plaintiff requested, "All documents describing all actions taken by Defendant to ensure that the parking facilities at its store comply with 28 U.S.C. § 36.406." (ECF No. 76 Ex. B.)[1] After producing some documents and identifying others in its privilege log, Defendant claimed that no other responsive documents were known to exist. (ECF No. 76 Exs. C, D.)

Plaintiff counsel's indicates that, during a review of the documents produced by Defendant, he uncovered a single four-page document representing a third party assessment of ADA compliance at one specific location. On August 26, 2015, Plaintiff's counsel questioned Mr. Dorsey about the four-page document, and Defendant did not object. (Dorsey Dep. at 110:17-116:4.)[2] Plaintiff indicates that Mr. Dorsey further revealed that the following documents— including third party ADA assessments for other locations—existed, but had not been produced, despite them being responsive to Plaintiff's requests:

- Architectural drawings with ADA requirements (Dorsey Dep. at 22:8-15.)

- Expert reports and/or evaluations that assess post-construction ADA compliance (Dorsey Dep. at 23:16-24:6.)

- Architectural drawings and ADA assessments stored on Defendant's "T-Drive" or in paper files (Dorsey Dep. at 25:5-26:9; 45:16-23; 90:18-91:3.)

- Formal measurements or evaluations that document the slope of parking lots and paths of travel pursuant to state or local law (Dorsey Dep. at 44:16-46:14.)

---

[1] Plaintiff probably intended to cite 28 C.F.R. § 36.406, Standards for new construction and alterations. There is no United States Code section with this number.
[2] ECF No. 76 Ex. E.

- Revised "Unit Assessment Forms" for 2016 (Dorsey Dep. at 48:18-50:15.)

- Excel Spreadsheets of "Unit Assessment Forms" maintained by the Facility Coordinator (Dorsey Dep. at 51:19-52:12.)

- Invoices from construction work completed following unit assessments (Dorsey Dep. at 53:12-56:15.)

- Proposals, bids, photographs and/or purchase orders for contractors to complete work following unit assessments (Dorsey Dep. at 55:6-56:15.)

- Inspection worksheets/reports prepared by third party consultants hired by Defendant to survey stores for compliance issues (Dorsey Dep. at 60:1-61:14.)

- Parking lot/path evaluations by third party firms (Dorsey Dep. at 75:11-78:3.)

- Contracts entered into between Defendant and third party firms to assess ADA compliance (Dorsey Dep. at 77:14-22.)

- Information created and stored on ProTrac computer software of stores built post-ADA that will be evaluated by third party firms (Dorsey Dep. at 82:4-83:7.)

- Surveys and related documents given to project managers (Dorsey Dep. at 105:1-13.)

On August 28, 2015, Defendant contacted Plaintiff and claimed that the four-page document was "an attorney privileged/work production communication" and had been inadvertently disclosed. (ECF No. 76 Ex. F.) Defendant requested that Plaintiff return the four-page document and that Mr. Dorsey's deposition transcript be redacted to remove all references to it.

Plaintiff filed a Motion for Extension of Time to Complete Discovery on August 28, 2015, in which she sought more time to move to compel third party reports and conduct further discovery to determine any spoliation issues. (ECF No. 52.) Later that day, Defendant served

Plaintiff with its Second Supplemental Privilege Log, which claimed that the four-page document and other related reports were privileged. Consequently, on September 2, 2015, Plaintiff submitted a Supplement to her Motion for Extension of Time to Complete Discovery, explaining that she had received an updated privilege log from Defendant and had concerns about its adequacy under Federal Rule of Procedure 26(b)(5). See ECF No. 59. This Court granted Plaintiff's Motion for Extension of Time to Complete Discovery on September 3, 2015 (ECF No. 61).

On September 10, 2015, this Court held a status conference with the parties (ECF No. 68). At that conference, Defendant agreed to provide another updated privilege log by September 16, 2015. Plaintiff states that, when her counsel subsequently received this Third Supplemented Privilege Log, he noticed several discrepancies between the entries on the privilege log and the testimony of Mr. Dorsey at his deposition. Additionally, Plaintiff challenged Defendant's claims of privilege and/or work product. The parties scheduled to meet and confer by telephone on September 18, 2015, later postponed until September 22, 2015 (ECF No. 76 Ex. G). Plaintiff states that, in that meeting, defense counsel acknowledged the discrepancies in its privilege log, and agreed to provide yet another updated privilege log. Defendant served Plaintiff with its Amended Third Supplemented Privilege Log on September 22, 2015 (ECF No. 76 Ex. H). Nevertheless, Plaintiff maintains that nearly all of the discrepancies remained.

Plaintiff seeks production of the aforementioned documents that Defendant's corporate designee referred to in his deposition, including all third party reports evaluating Defendant's compliance with the parking accessibility requirements of the ADA. Defendant contends that

these reports are privileged, both because they fall under the attorney-client privilege and because they were prepared in anticipation of litigation and thus constitute attorney work product.

Federal Rule of Civil Procedure 26(b)(1) states, "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense [.]" Although this Rule is couched in broad terms, specific exceptions are carved out for the attorney-client privilege and work product doctrine.

The Attorney-Client Privilege

The attorney-client privilege "protects communication between attorneys and clients from compelled disclosure. The privilege applies only to a communication… made between privileged persons… in confidence… for the purpose of obtaining or providing legal assistance for the client." In re Teleglobe Communications Corp., 493 F.3d 345, 359 (3d Cir. 2007). Non-legal business advice does not enjoy protection under the attorney-client privilege. See Wachtel v. Health Net, Inc., 482 F.3d 225, 231 (3d Cir. 2007). Further, the attorney-client privilege does not protect documents just because "they were transferred to or routed through an attorney, or because an attorney was copied on a document." Wiseman Oil Co., Inc. v. TIG Ins. Co., No. 011-1011, 2012 WL 1866296, at *2 (W.D. Pa. May 22, 2012) (internal citation omitted).

Plaintiff contends that the party claiming the attorney-client privilege carries the burden of demonstrating that it applies, and that the privilege is to be construed narrowly. See, e.g., Cottillion v. United Refining Co., 279 F.R.D. 290, 298 (W.D. Pa. 2011). Plaintiff argues that Defendant has failed to meet its burden of demonstrating that the attorney-client privilege applies to the documents at issue.

First, Plaintiff maintains that the documents at issue are not communications made between privileged persons. Instead, the documents at issue were passed between third party consultants and Defendant's facility or project managers. There is no persuasive evidence that Defendant's counsel took part in these communications, or directed them to occur.

For instance, Mr. Dorsey testified at the Rule 30(b)(6) deposition that Robert Buck, a third-party consultant hired by Defendant, surveyed about a dozen Cracker Barrel stores for ADA compliance issues. Mr. Dorsey explained that Mr. Buck provided the inspection reports to Mr. Dorsey, Defendant's Senior Director of Construction Facility Services, and Jeff Smith, Mr. Dorsey's predecessor. (Dorsey Dep. 26:22-27:1; 50:13; 60:17-61:14.) Plaintiff notes that Mr. Dorsey did not testify that Defendant's counsel received Mr. Buck's reports.[3]

Plaintiff further notes that Defendant's counsel was absent from other communications regarding post-construction ADA compliance matters. Mr. Dorsey explained that, as Defendant renovates parking lots as part of its ongoing, general maintenance process, it simultaneously evaluates potential ADA compliance issues. (Dorsey Dep. at 23:16-25:1.) Mr. Dorsey stated that, as Defendant prepares to tear up sidewalks, curbs, and parking lots, the original drawings and elevations of the lot are revisited to ensure that the new lot will comply with the ADA. This information is subsequently provided to general contractors to obtain work bids. Likewise, Mr.

---

[3] Plaintiff notes that Defendant's Third Supplemented Privilege Log (Amended) identifies Defendant's counsel as a recipient. However, it does not identify Defendant's Senior Director of Construction Facility Services as a recipient. See, e.g., Exhibit H, Doc ID # CBOC01146-CBOC01160. Plaintiff contends that that Defendant addressed such documents to Defendant's counsel in order to attempt to invoke the attorney-client privilege. Cf. SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 478 (E.D. Pa. 2005)("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda.")(internal citation omitted).

Dorsey stated that third party firms transmit survey results to the project manager. (Dorsey Dep. at 105:1-10.) Plaintiff argues that this testimony demonstrates that Defendant's counsel was very much—if not entirely—removed from communications between surveyors and Defendant's employees. Plaintiff concludes that this presents a fundamental flaw in Defendant's claim of privilege as the documents at issue are not communications between attorney and client.

Further, Plaintiff argues that, notwithstanding that Defendant's counsel did not participate in communications between employees and third parties, the surveys constitute non-legal business guidance; no opinion on the law is given nor is there any indication that the document was meant to assist Defendant in a legal proceeding. In fact, Mr. Dorsey's testimony shows that counsel had no involvement in selecting which stores would be surveyed. Rather, facility managers recommended stores. (Dorsey Dep. 74:11-75:4.) The selection was based on conspicuous, visible problems, such as "cracks" and "separations," not legal advice. (Dorsey Dep. 89:3-9.)

Plaintiff notes that Mr. Dorsey's testimony also reveals that Defendant largely relied on the surveys to provide financial guidance for undertaking remediation projects and to monitor store conditions. (Dorsey Dep. 92:5-18; 131:16-132:1.) In other words, the surveys helped facilitate business decisions, not legal decisions. Plaintiff argues that the surveys cannot be considered communications for purposes of obtaining legal advice and that the attorney-client privilege does not apply.

Defendant contends that "certain documents" are privileged because they contain attorney-client privileged communications. However, as Plaintiff observes, on the Third

Supplemented Privilege Log, Defendant has marked every single entry as privileged. Defendant has failed to demonstrate which communications it is referring to and that they meet the standard for attorney-client privileged communications, as opposed to business communications regarding third-party surveys. Therefore, Defendant's argument should be rejected.

    <u>The Work Product Doctrine</u>

    Federal Rule of Civil Procedure 26(b)(3)(A) provides, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial[.]" The attorney work product protection "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." <u>In re Grand Jury (Impounded)</u>, 138 F.3d 978, 981 (3d Cir. 1998) (internal citation omitted). The Supreme Court has also observed that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." <u>United States v. Nobles</u>, 422 U.S. 225, 238-39 (1975) (footnote omitted). "It is not necessary that litigation has been commenced or even threatened before a document can be found to have been prepared in anticipation of litigation." <u>Walter v. Travelers Personal Ins. Co.</u>, 2013 WL 2252729, at *4 (M.D. Pa. May 22, 2013).

    Defendant argues that Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing of substantial need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents. Fed.R.Civ.P. 26(b)(3). Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work

prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of substantial need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." In re Ford Motor Co., 110 F.3d 954, 962 n.7 (3d Cir.1997). Accordingly, while opinion work product protection is not absolute, it requires a heightened showing of extraordinary circumstances. See Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985); see also Rhone–Poulenc Rorer Inc. v. Home Indemnity Co., 32 F.3d 851, 866 (3d Cir. 1994). Defendant argues that Plaintiff had made no showing sufficient to establish a substantial need for the work-product protected documents in this matter.

Plaintiff responds that the work product doctrine requires the party seeking its protection to prove that it applies. Conoco, 687 F.2d at 730. Further, the work product doctrine does not apply to materials prepared in "the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Fed. R. Civ. P. 26(b)(3) advisory committee notes. See also In re Grand Jury Investigation, 412 F. Supp. 943, 948 (E.D. Pa. 1976) ("Advising a client about Case matters which may or even likely will ultimately come to litigation does not satisfy the 'in anticipation of' standard.") (internal citation omitted).

Although the work-product doctrine protects documents, it does not protect factual information within the documents. "One party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable." Fed.R.Civ.P. 26(b)(3) Advisory Comm. Note, 48 F.R.D. 487, 501 (1970)." Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615 (N.D. Cal. 2011).

"It would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively… " CP Kelco U.S. Inc. v. Pharmacia Corp., 213 F.R.D. 176, 179 (D. Del. 2003). "Hence the truism that a privilege cannot be used as both a shield and a sword. See United States v. Rylander, 460 U.S. 752, 758, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The non-legal equivalent of that truism is equally to the point: "You can't have it both ways." Id.

Defendant contends that the documents in question are all attorney work-product. Elizabeth Wilson, Cracker Barrel's Associate General Counsel responsible for supervising its ADA compliance (Wilson Aff. ¶ 2), states that she caused the following documents to be identified as attorney work product:

Documents listed on Defendant's Third Supplemental Privilege Log (Amended), Bates numbers CBOC270-CBCO273 and continuing through Bates numbers CBCOC676 through CBCOC19045, which include those documents that assess ADA compliance at certain stores (Dorsey Dep. at 23:16-24:6), including inspection worksheets concerning surveys of stores completed by engineering experts concerning compliance issues (Dorsey Dep. at 60:1-61:14); parking lot/path evaluations prepared by engineering experts (Dorsey Dep. at 75:11-78:3); contracts entered into between Cracker Barrel and the three engineering firms to assess ADA compliance at stores (Dorsey Dep. at 77:14-22); and information on stores that is created and stored on Cracker Barrels' ProTrac computer software that was evaluated by the engineering experts (Dorsey Dep. at 82:4-83:7). (Wilson Aff. ¶ 2.)

Wilson explains that several of the documents are contracts for services between Cracker Barrel and engineering firms (the Buck Group, QPM and D&E) and that the reports, evaluations

and other documents listed on the Privilege Log were all prepared pursuant to those contracts in order to assist her in her capacity as Cracker Barrel's in-house legal counsel; that the experts were engaged in anticipation of litigation such as the instant case when, in 2011, Wilson and other Cracker Barrel representatives concluded that they needed expert evaluations to determine if any stores were vulnerable to accessibility litigation following the effective date of the 2010 ADA Standards for Accessible Design and associated governmental regulations; that the engineers were engaged to help formulate mental impressions, conclusions, opinions, and legal theories concerning impending ADA litigation and appropriate remediation plans, if necessary; that certain documents listed on the Privilege Log contain written communications between Cracker Barrel employees for the purposes of facilitating the rendition of legal advice in the course of Wilson's professional relationship with Cracker Barrel; that she inadvertently caused the disclosure of Exhibit 12 to Mr. Dorsey's deposition, which was created by the engineering expert as part of Cracker Barrel's ADA compliance program; that certain of the documents listed on the Privilege Log also contain documentation of attorney-client privileged communications consisting of communications among various Cracker Barrel in-house counsel, the engineering experts and various non-attorney client representatives concerning the expert evaluations and recommendations; that she compiled the responses to Plaintiff's document production requests and that while Mr. Dorsey was involved in the effort, he had limited knowledge about the process of compiling the responses and was not authorized by Cracker Barrel concerning the subject and was obviously testifying from his own limited personal knowledge and belief and the same is true of the selection of engineering firms. (Wilson Aff. ¶¶ 3-13.)

Plaintiff maintains that third party reports of ADA compliance do not qualify for use of the work-product protection because Defendant did not conduct the surveys in anticipation of litigation. In distinguishing between routine internal investigations and work done for litigation purposes, courts have followed the rule of thumb that "if the document would have been created regardless of whether litigation was expected to ensue, the document is deemed to have been created in the ordinary course of business and not in anticipation of litigation." See Electronic Data Systems Corp. v. Steingraber, No. 4:02 CV 225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003). Plaintiff contends that Mr. Dorsey's testimony establishes that survey reports would have been created regardless of potential litigation.

Indeed, Mr. Dorsey confirmed that monitoring the compliance of parking lots with the ADA has been ongoing. (Dorsey Dep. 24:7-14.) Mr. Dorsey testified that Defendant hired Mr. Buck, the third party consultant, "sometime in 2012," which was years before Plaintiff filed her Complaint against Defendant. See ECF No. 1 (showing complaint was filed on October 27, 2014); Dorsey Dep. 59:13-16. Further, Defendant's privilege log states that Mr. Buck's surveys began in 2011. See ECF No. 76 Ex. H. Plaintiff argues that Defendant completed surveys in the ordinary course of business and for purposes unrelated to this litigation.

Additionally, even if Defendant investigated issues that could involve litigation in the future, courts have held that such investigations do not warrant protection under the work product doctrine because they were done in the ordinary course of business. See, e.g., Steingraber, 2003 WL 21653414, at *5 (finding no protection under work product doctrine because investigations are "routine, expected and necessary"); E.E.O.C. v. Safeway Stores, Inc.,

2002 WL 31947153, at *5 (N.D. Cal. Sept. 16, 2002) ("Distinguishing between claims investigating and work done in anticipation of litigation may turn on whether the investigations include or involve legal opinions or trial strategies, and whether the investigation deviated from the norm."); Ledgin v. Blue Cross and Blue Shield of Kansas City, 166 F.R.D. 496, 498 (D. Kan. 1996) (determining no work product where memorandum, prepared by associate general counsel, addressed possibilities of action that might be taken to avoid future problems and complaints); Soeder v. General Dynamics Corp., 90 F.R.D. 253, 255 (D. Nev. 1980) (concluding report was prepared in ordinary course of business as defendant could have prepared it to improve safety, guard against adverse publicity, or promote economic interests).

Plaintiff argues that Defendant's investigations involved no legal opinions. Defendant's corporate designee, Mr. Dorsey, explained that, after learning of a potential ADA violation at its locations, the facility manager and/or a contractor would visit the site to determine if there was an ADA violation and, if necessary, the scope of the work required for remediation. (Dorsey Dep. 12:22-13:16.) Plaintiff indicates that there is no indication that the surveys contained legal opinions or litigation strategies. Rather, they were fact-specific investigations and the work product doctrine does not apply.

Defendant has not demonstrated that the documents at issue constitute attorney work-product, as opposed to ordinary business documents created during routine renovations at facilities or when certain stores received complaints from customers. Ms. Wilson's statement that she "subjectively believed that litigation was a real possibility when the 2010 ADA Guidelines went into effect" is at odds with Mr. Dorsey's testimony that the documents were created during the normal course of business, without any involvement of counsel and

contemporaneous documents discussing the project which do not reflect the involvement of counsel. Defendant's argument should be rejected and Plaintiff's motion to compel these documents should be granted.

AND NOW, this 29th day of October, 2015,

IT IS HEREBY ORDERED that Plaintiff's motion to compel (ECF No. 76) is granted and Defendant shall produce documents sought by Plaintiffs by November 6, 2015.

s/Robert C. Mitchell_____
ROBERT C. MITCHELL
United States Magistrate Judge